## THOMAS CONNOLY, APPELLANT,

*v.*

## JOHN CUNNINGHAM ET AL., APPELLEES.

In the year 1879, A, the owner of a parcel of land, mortgaged the same to B, to secure the payment of $800.

Afterwards, A and B discover the existence of a mortgage upon the same premises, to C, to secure the payment of a larger amount of money.

For the purpose of having the latter mortgage removed, as a cloud upon the title to the premises, A and B, without the knowledge of C, allow the condition of their mortgage to be broken, by the failure to pay an installment of interest, and by mutual agreement enter a suit of foreclosure, making C a party thereto ; in which B voluntarily appears, and consents to judgment.

A decree is thereupon entered, subordinating C's mortgage to that of B.

The property is sold at sheriff's sale to B, who agrees with A to purchase for the amount of the mortgage and costs, and reconvey the same to A upon being indemnified.

B refused to reconvey, upon compliance with the terms of the agreement on A's part ; whereupon A brings the present action.

*Held*, that the foreclosure proceeding was a sham, a fraud upon the Court, and upon C ; that no right was determined thereby, and that a Court of Equity will grant no relief to either party claiming under such sham decree.

It is against public policy for persons to agree or undertake to occupy the attention of Courts with pretended litigation, in which there are no questions to be judicially determined.

APPEAL from Second Judicial District, holding terms at Olympia.

A statement of the case will be found in the opinion of the Court.

*George C. Israel*, for Appellant.   *Gerrit T. Thorn*, of Counsel.

It is the general rule of law, that if an agreement is susceptible of two meanings, one legal and the other not, the presump-

tion will be in favor of the transaction, and that interpretation will be put upon it which will support and give it operation. Courts cannot presume anything in favor of illegality. They must consider a transaction legal until *facts* are presented which compel it to hold otherwise. (*Shore* v. *Wilson*, 9th Clark and Finelly Reports, 397, citing Wharton on Evidence, Sec. 1249; *Lorillard* v. *Clyde*, 83 N. Y. Court of Appeals, 384; *Wing* v. *Glick*, 56 Iowa, 473; *Bennett* v. *Clough*, 1 Barnwell and Alderson, 463, and 41 English Common Law Reports, 219; *Craft* v. *Bennett*, 8 Kan. Rep. 328; *Bibb* v. *Miller*, 11 W. P. D. Bush, Ky. Rep. 306; *Wilkins* v. *Riley*, 47 Miss. Rep. 313. See reference to same, Miss. Digest Supplement, p. 173, under title of Construction. *Young* v. *Edwards*, 72 Penn. State Rep. 267; *Bumpus* v. *Fisher*, 26 Tex. 561.)

The agreement of the parties herein was valid.

There is no stipulation in it, showing any intention to resort to any illegal or improper means to mislead the Court in the foreclosure proceedings, or to induce or obtain a decree or a sale by any fraud or artifice.

The validity of the agreement depends upon the intentions and motives by which the parties were animated, and the object sought to be accomplished.

If the object and intentions were fair, if there was no motive or intention to do anything wrong, and nothing transpired that was contrary to public policy, the agreement was unobjectionable, and should be sustained; and in this position, and in this view of the case, we are fully sustained by authority. (*Wicker* v. *Hoppock*, 6 Wall. U. S. 94; *Phippen* v. *Stickney*, 3 Met., 44 Mass. 384; *Morrison* v. *Darling*, 47 Vt. 67; *Wellington* v. *Kelly et al.*, 84 New York Ct. Appeals, 543; *Marie* v. *Garrison*, 83 New York Ct. Appeals, 14; *Marsh* v. *Russell*, 66 New York Ct. Appeals, 288; *Adams* v. *Adams*, 91 New York Ct. Appeals, 381; *Archbald* v. *Thomas*, 3 Cowen, 284; *Bame* v. *Drew*, 4 Denio, 290; *Garrett* v. *Moss*, 20 Ill. 549; *Quirk* v. *Thomas*, 6 Mich. 76; *Hunt* v. *Elliott*, 80 Ind. 245; S. C. 41 Am. R. 794; *Harris* v. *Roberts*, 12 Neb. 631; S. C. 41 Am. R. 779; *Jenkins* v. *Frink*, 30 Cal. 586.)

We understand the well settled rule of law, that where transactions are illegal, and the parties thereto are in contemplation

of law *in pari delicto,* that a Court of Equity will not aid a *particeps criminis* to enforce an executory contract, or relieve him from the effects of it by setting it aside, or aid him to recover the title to property that he has parted with by its means. But there are exceptions and limitations to this rule, made and allowed also upon motives of public policy. While we are not willing to concede or admit that the parties herein meant to violate any rule of law against public policy or good morals, yet if the Court should consider that the agreement was not clearly right, or what should have been done under the circumstances, we insist that it is a case that falls under an exception to the rule as above stated; and that the rule should not be an obstacle (there being no moral turpitude) in the way of appellant's right to recover. (*Brooks* v. *Martin,* 2 Wall. U. S. 70 ; *Hawey* v. *Varney et al.,* 98 Mass. 118 ; *Osbern* v. *Williams,* 18 Vesey, Jr. 379 ; *Dashwood* v. *Peyton,* Ib. 27 ; *Gilliam* v. *Brown,* 43 Miss.; *Tracy* v. *Talmage,* 14 New York, 162 ; *Kiewert* v. *Rindskepf,* 16 Wis. 481; *Spring Co.* v. *Knowlton,* 103 U. S. 49 ; *Concord* v. *Delaney,* 58 Me. 316.)

If we are correct in our construction of the agreement, the question of illegal consideration does not appear on the face of the pleadings, and cannot be inferred or raised upon demurrer; it must be pleaded. (*Tyler* v. *Hand,* 7 Howard, U. S. 574–583 ; *Fallows* v. *Taylor,* 7 Term Durnford & East, 475 ; *Harris* v. *Roberts,* 12 Neb. 631 ; *Clemens* v. *Clemens,* 23 Wis. 637.)

*P. P. Carroll,* for Defendants in Error and Appellees.

*McNaught, Ferry, McNaught & Mitchell,* of Counsel.

Appellant wants the Court to say that Cunningham holds in trust for him. He alleges no express trust, and he shows no cause for resulting, implied, or constructive trust. (Code, Secs. 372, 375; Code, Secs. 2311, 2325, subdiv. 1; 1 Throop on Fraud and Verbal Agreement, Secs. 10, 11, p. 83 ; 1 Perry on Trusts, Secs. 124, 125, note, 133, 134, 135.)

The appellant does not seek to impeach the judgment of Cunningham ; and by his acts, and the showing in his complaint, is estopped even if he sought to undo the judgment.

The Court will leave the parties where, in view of all the

facts, they have placed themselves. (*Plant* v. *Anderson*, 16 Fed. Rep. 914; Freeman on Judgments, Secs. 334 to 337 *a*; *Chase* v. *Christianson*, 41 Cal. 253; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. U. S. 634; Code, Sec. 436; Freeman on Judgments, Secs. 246–249; *Rhine & Brother* v. *Logwood*, 10 Louisiana Annual, 585; *Blake* v. *McKusick*, 10 Minn. 251; Freeman on Judgments, Secs. 286, 287; 1 Wharton on Contracts, Secs. 252, 257; *Lewis* v. *Meier et al.*, 14 Federal Reporter, 311.)

Appellant brought an action against appellee in the District Court, by filing a complaint, which alleged, in substance, the following, as the facts constituting his cause of action:

On the 31st day of March, 1879, appellant was the owner of N. half of lots 1 and 2, in block 15, Olympia, and on said day borrowed from appellee, Cunningham, $800, to be paid in two years, with interest payable quarterly, at one per cent. per month, and to secure the same a mortgage was made by appellant upon the aforesaid premises, to said Cunningham, which was duly recorded.

That some time after the making of said mortgage, appellant and the aforesaid appellee discovered for the first time that there was existing upon the records of Thurston County, aforesaid, what purported to be a mortgage upon said premises, made the 3d day of March, 1871, whereby one Moses H. Scott mortgaged to one Samuel Scott the said premises for $3,550. That neither appellant nor said appellee had knowledge of the existence of said Scott mortgage, until said discovery. That the same remained of record unsatisfied, although past due; and neither of the parties, appellant or appellee herein, had knowledge, or any means of knowledge, as to the residence or whereabouts of the said Scotts, or as to the payment of the indebtedness secured by said Scott mortgage, or whether it was continued, or entitled to be continued, as a valid and subsisting lien upon aforesaid premises; and that the continuance of the same, unsatisfied of record, tended to impair the said appellee's security upon said premises, and to cast a cloud upon appellant's title thereto. That on or about the 1st of May, 1880, the said parties hereto took counsel in relation to said Scott mortgage, and were advised by their said counsel that its validity could be tested by an action to foreclose appellee's mortgage; that

said appellee's mortgage was not yet due, but the interest thereon was payable every three months ; that appellant and appellee then and there, acting under and by advice of said counsel, mutually agreed that appellant, for the purpose of testing the validity of said Scott mortgage, and for no other purpose, would omit to pay the interest on appellee's mortgage when the same became due, so that a default might be made and taken therein, giving appellee a cause of action against appellant for foreclosure of his said mortgage.

That after default, it was mutually agreed as aforesaid, appellee should commence an action and make said Scott a party defendant, and that by proper averments in the complaint said Scott should be required to answer concerning the validity of his said mortgage, and the existence of the indebtedness secured thereby ; and so that the same might and could be contested in appellee's foreclosure action, if the same should be sought to be enforced by the said Scott against said premises without merit.

That it was further mutually agreed on by the said appellant and appellee, that appellant should accept service of summons and complaint in said foreclosure suit, to be commenced as aforesaid, and make no appearance in said action except against said Scott, but should suffer judgment to be taken by default ; and appellee should be allowed to take a decree of foreclosure and order of sale of said premises against appellant ; and that said premises should be sold by the sheriff of said county in manner required by law ; and that at such sale appellee should become the purchaser of the said property, for an amount at least equal to the amount of his claim with interest and expenses, and not exceeding its value ; and that said sale should be confirmed without objection on part of appellant, and deed should be made by the sheriff to appellee in pursuance of such sale, conveying to him the legal title of said property.

That appellee should take and hold the legal title so acquired in trust for appellant, and as security for the payment of the said $800 with interest, and costs, expenses and counsel fees in said foreclosure action ; and that upon payment of the same by appellant, and upon demand of appellant, the said appellee, Cuningham, agreed to reconvey the said legal title to appellant, the same as he received it from the said sheriff.

That it was further agreed, as aforesaid, that while said appellee should hold the said legal title in trust for appellant, as aforesaid, and during the pendency of said action, he should receive the rents, issues, and profits of the tenements on said premises, and apply the same in liquidation of his said claim against appellant ; and that upon a reconveyance, to be made as aforesaid to appellant, he, said appellee, should account for the rents, issues, and profits received by him, and apply them on appellant's indebtedness.

That it was further mutually agreed that appellee should bring said action solely for the purpose of testing the validity of said Scott mortgage, and to change appellee's security from a mortgage to a deed, absolute in form, freed from the said Scott mortgage, and to be held in trust in manner and form and for the purposes aforesaid.  That appellant performed all the conditions of the aforesaid agreement on his part.  That appellee commenced said action, and proceeded to foreclose his said mortgage—obtained a decree and order of sale—whereupon the said premises were sold to him by the said sheriff, and a sheriff's deed was duly made and executed to appellee, conveying to him the legal title to said premises, and that he received the rents, issues, and profits as aforesaid.  That afterwards, appellant wished and offered to account with and pay appellee all the costs, expenses, counsel fees, and disbursements incurred in the said foreclosure proceedings, and the principal and interest due on said $800 mortgage.

That said appellee refused to account, or to accept or receive the said costs, etc., and the amount due as aforesaid; and wrongfully, and contrary to the aforesaid mutual agreement, wholly refused to reconvey said premises to appellant, and wrongfully claimed the same in his own right, and wrongfully denied that he held the same in trust for appellant.

That the said premises are worth four thousand dollars, and that appellant is in possession of part of said premises.

After the averment of these facts, the complaint concludes with a prayer in due form, for an account, specific performance, and other relief.

To this complaint the defendant demurred.  The demurrer was sustained and the cause dismissed.  From the judgment of

dismissal an appeal is taken to this Court. The question thus presented to us for our determination seems, briefly stated, to be this: Were the agreement set forth in the complaint, and the transactions in pursuance thereof, such as à Court of Equity will recognize as the foundation for the relief sought?

Courts are for the adjusting of variances or difficulties, for the managing of old rights and creating of new, for changing the situation of parties as only a Court can change it. It is against public policy for persons to agree or undertake to occupy the time and attention of the people's Courts with pretended litigation in which there is no real controversy, or no change of attitude or relation sought to be effected by the judgment.

This, so far as the foreclosure of the mortgage subsisting between appellant and appellee is concerned, is just what in substance they agreed and undertook to do. They had agreed beforehand what should be the outcome, effect, and operation of the judicial proceedings they instituted. There was, as between them, nothing substantial for the Court to do. No real judicial change in these relations was to be effected by intervention of the Court. The relation of mortgagor and mortgagee which subsisted between them at beginning of the action, was still to subsist between them at its close, utterly unaffected in any material particular. A paper mortgage which had passed between them was to be demolished, and a sheriff's deed was to be substituted; which, as between the parties, was to have precisely the same meaning and operation.

Change of possession which followed the deed was a mere voluntary matter, for securing which action of the Court was of no utility; and the accruement of costs was a mere incident to the judicial proceedings, unbeneficial to either party, and unaffecting their relations as mortgagor and mortgagee.

But it is urged that under our statutes any sort of relief may be got by confession of judgment, and that the judicial proceeding was in its nature a confession of judgment.

To this view two answers apply: 1st, Our statute, in order to insure good faith and prevent collusion and fraud, has hedged about the proceedings for confession of judgment by many checks requisite to be observed, not one of which was complied

with in the proceeding instituted by these parties.   2d, A con-
fession of judgment effects substantial changes in the attitude
and relation of the parties ; whereas, by this proceeding, the
parties were to be left precisely. as they were before.

But it is said there was a real controversy to be waged with
Samuel Scott, the prior mortgagee, and a substantial judgment
to be taken as to his rights.

But on what theory was the plaintiff Cunningham entitled to
have him made a party to the proceeding against Connoly?

On the theory that Cunningham was waging against Connoly
a *bona fide* suit for actual foreclosure, to which suit Samuel
Scott was a necessary party.   That theory was the theory on
which the Court must have proceeded to adjudicate against
Scott's rights.   But that theory was a sham and an imposition
on the Court, and it is very questionable whether the decree
against Scott has any validity whatever.   In reality, plaintiff
Cunningham and defendant Connoly were in collusion ; they
really were both plaintiffs, and the Scotts were the only defend-
ants.   The real purport of the suit was to quiet title, and not to
foreclose a mortgage.   These men, Connoly and Cunningham,
found the Scott mortgage standing in their way.   It was a cloud
on their title, and they sought to get rid of it.   How did they
proceed ?   By a foolishly unnecessary indirection, and by an
imposition on the Court.   They led the Court blindly and cir-
cuitously to accomplish that which no doubt it would intelli-
gently and willingly have done, had it been frankly asked to do
it.   That the intention of Connoly and Cunningham was merely
to clear the 'title is manifest from the consideration, that had the
mortgage to Scott been still a lien, the Court could have sold
the premises subject to it, without decreeing its foreclosure—an
event entirely undesired, unprovided for, and uncontemplated
by the parties, in their agreement for conduct and issue of the
suit.

The deceitful and fraudulent character of this agreement ap-
pears in another way.   It was stipulated that Cunningham
should become purchaser at the sheriff's sale, and although it is
not said that no one else should bid, it appears from the whole
tenor and spirit of the agreement, that the parties intended that
he and no other person should be purchaser.   Otherwise, their

substantial relationship of mortgagor and mortgagee could not be maintained unimpaired.

They made it their intent and interest that there should be no fair judicial sale, but only a sham sale—fraudulent perhaps, as against Samuel Scott, idle as between themselves, sham as towards the Court. This fraud, going to the very substance of their contract, was sufficient of itself to make it void. Any collusive act of parties, whereby the record in a suit is made up to deceive the Court purposely as to the true intent and object of the suit, is a fraud. It matters not how innocent was the ultimate object desired to be attained, nor how justifiable the parties were in purposing to attain that end, nor how absurdly unnecessary was the deceit which was practised.

Any deceit is utterly inconsistent with that perfect directness and openness which should characterize parties when they seek the intervention of their sovereign to adjust in Court their difficulties. Every agreement to practice such deceit is fraudulent, against public policy, and void.

This Court, as a Chancery Court, is now asked to become a party to such an agreement, by approving and confirming it, and assisting appellant to the advantage he expected to get from it. We refuse the alliance. We will leave the parties where we find them.

They trusted each other's honor, and for all rights under their agreement we will send them upon each other's honor to repose. Both were in fault, and as far as we can see, equally so.

If one of them was advised by a lawyer to deceive the Court, he can look to the responsibility of that lawyer.

We are told that this is a case of hardship. But we do not see how there can be much hardship, in light of the fact that despite the void agreement, there still remains the mortgage which the agreement was intended to displace. If the agreement was void, because against public policy, what is to prevent appellant from urging now in the proper form, under that mortgage, whatever rights a mortgagor has by our laws against a mortgagee in possession who refuses to foreclose?

The judgment of the District Court will be affirmed.

We concur: S. C. WINGARD, Associate Justice.
GEORGE TURNER, Associate Justice.