[No. 19506. Department Two. November 30, 1925.]

GUS LINDEMAN, *Appellant,* v. F. A. DUNCAN *et al., Respondents.*[1]

CONTRACTS (46)—LEGALITY—PREVENTION OF COMPETITION. A demurrer for want of sufficient facts, is properly sustained to a complaint for breach of a contract stifling competition at a receiver's sale, whereby plaintiffs agreed not to bid for assets of an insolvent corporation worth $180,000, in consideration that $14,000 be paid them, on a sale to their competitor for $60,000.

Appeal from a judgment of the superior court for King county, Honorable Charles E. Claypool, judge *pro tempore,* upon sustaining a demurrer to the complaint, dismissing an action for damages for breach of contract and conversion. Affirmed.

*Howard Garrison* and *Carroll B. Graves,* for appellant.

*Rigg & Venables, Nat U. Brown,* and *Karl F. Hass,* for respondents.

MITCHELL, J.—The plaintiff, content with the allegations of his amended complaint to which a general demurrer was sustained, has appealed from a judgment dismissing the action.

[1]Reported in 241 Pac. 7.

The amended complaint alleged, in effect, that the appellant was one of the principal stockholders of the Rovig Lumber Company, a corporation. That the Rovig Lumber Company had become insolvent and was in the hands of a receiver. That bids were called for, pursuant to an order of court directing sale of all the assets then in the hands of the receiver, consisting of real and personal property, alleged to be of the value of $180,000. That two bids were submitted as follows: One by the plaintiff, which the court, upon hearing, considered to be in the sum of $48,000; and the other one in the sum of $38,000 by the respondents F. A. Duncan, W. A. Bell, E. E. Houston and Charles Fratt, as trustees, acting on behalf of certain corporations that were creditors of the insolvent corporation, to the extent of approximately two-thirds of all claims filed and allowed in the receivership proceedings. That thereupon the receiver petitioned the court for instructions in disposing of the bids and that, at the time fixed for hearing the petition, the respondents and the corporations they represented as trustees appeared and protested against the acceptance of the bids, agreeing that, if both bids were rejected and new ones called for, they would bid not less than $60,000 for the assets, and deposited a certified check for $10,000 as security for the making of such bid. That the court ordered both bids rejected and a resale of the property. That, at the new sale, the trustees (respondents) bid the sum of $60,000 for all the property and assets of the corporation then in the hands of the receiver; that no other bid was made; that the bid was reported to and confirmed by the court without any objection; and that all of the property and assets were transferred and conveyed by the receiver to the trustees. It was further alleged:

"That after the order for re-sale aforesaid, and a

few days prior to the date fixed for the sale, the defendants, acting by and through their said trustees, represented to plaintiff that they intended to bid the sum of ($60,000) Dollars for the property at the sale, and that all they desired to obtain from said property or their bid was the benefit accruing to them as creditors from the purchase price at such bid, and to obtain a sufficient amount to pay for the time, effort, cost and expense by the trustees in looking after the affairs and protecting the interests of the creditors in the receivership proceedings, which last amount they placed at fourteen thousand five hundred dollars ($14,500); That plaintiff was unable to pay said amount at that time, but offered to give his promissory note in that amount, due in one year, with the interest and security to be agreed upon.

"That, in consideration of the premises and the conditions then agreed upon, the plaintiff and defendants, on September 17, 1924 orally agreed as follows: That the said trustees would bid at said sale for the whole of the property and assets of the Rovig Lumber Company, as an entirety, the sum of sixty thousand dollars ($60,000), and that the plaintiff would not bid at said sale, but the bid of the trustees should be for and for the use of the plaintiff; and that, if the property was sold to said trustees at said bid, the plaintiff would pay to them sixty-thousand dollars ($60,000) in cash and execute and deliver to them a promissory note in the sum of fourteen thousand five hundred dollars ($14,500), due one year after date, with interest at seven per cent, per annum, and signed by the plaintiff and his wife and by one W. C. Fudge and wife, which said note and the amount thereof were to be in payment of the time, effort, cost and expense of the trustees as aforesaid; and that the defendants and said trustees would cause all the property and assets acquired by their bid to be conveyed and transferred to the plaintiff.

## "XI

"That the property and assets hereinbefore mentioned consisted of real estate, leasehold interests, stocks of lumber, coal, machinery, and farm imple-

ments, and the plants and buildings in which said personal property was contained, a sash and door factory, and bills and accounts receivable; the fair market value of said property and assets, as an entirety, was One Hundred and Eighty Thousand Dollars ($180,000)."

It was further alleged that the appellant was able and willing to perform the contract on his part and tendered performance, but that the respondents refused, and still refuse, to comply and convey the property to the appellant, and on the contrary have converted the whole of such property to the damage of the appellant in the sum of $105,000 in which amount judgment is demanded.

These parties were competitors. The appellant knew that, at the risk of a $10,000 deposit, the respondents would bid *not less than* $60,000 for property worth $180,000. The allegation is that the oral agreement provided that the respondents would bid $60,000 for all the property "and the plaintiff would not bid at said sale." Manifestly, according to the allegation, one of the moving and material considerations to be yielded by the appellant was that he would not bid at the sale. Why should he not bid at the sale? Because to do so would interfere with his plan to deprive one-third of the creditors, as well as the other stockholders who were not parties to the alleged oral agreement, of their just rights in the property of an insolvent corporation which he was attempting to get, so far as those others were concerned, at one-third of its real value.

Still further, the allegation is that, in addition to reimbursing the respondents, he was to give them his interest bearing promissory note, with sureties, in the sum of $14,000 for their cost and expense "in looking after the affairs and protecting the interest of the creditors in the receivership proceedings." Clearly such a course, if carried out, would constitute fraud

against the other stockholders and the other creditors of the insolvent corporation. It would have for its purpose the stifling of competitive bidding at a judicial sale. It would be a fraud going to the very substance of the contract and sufficient of itself to make it void. *Connolly v. Cunningham,* 2 Wash. Terr. 242, 5 Pac. 473. This rule is universally free from dissent. 6 R. C. L. (Contracts) § 210, p. 810; 13 C. J. (Contracts) § 392, p. 450; Page on the Law of Contracts, vol. 2, § 876.

Other reasons for holding that the amended complaint does not constitute facts sufficient to constitute a cause of action are presented by the respondent, but they need not be discussed because of views already expressed as to the illegality of the alleged oral contract.

The contention of the appellant is that the allegations of the amended complaint show the existence of a constructive trust in his favor. It is enough to say that he was dealing with competitors and furnished them no means. We cannot endorse that argument or contention of the appellant, or any other than that the amended complaint is nothing other than one seeking to recover alleged damages because of the breach of an alleged contract that was illegal.

Affirmed.

TOLMAN, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.